**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**JASON ANTHONY JOHNSON,**

        **Petitioner,**

**v.**                                                    **Case No.  5:15cv34-WS/CAS**

**STATE OF FLORIDA,**

        **Respondent.**
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

Petitioner, Jason Anthony Johnson, a prisoner in the custody of the

Florida Department of Corrections, proceeding pro se, filed a petition for

writ of habeas corpus pursuant to 28 U.S.C. § 2254 on February 19, 2015,

under the mailbox rule.  ECF No. 1.  Petitioner challenges his convictions

and sentences following a jury trial.  By order entered February 26, 2015,

the Court directed the Respondent to file an answer, motion or other

response to the petition.  ECF No. 5.

On March 25, 2015, Petitioner filed a motion for stay citing certain

state court proceedings arising from a motion to correct illegal sentence

under Florida Rule of Criminal Procedure 3.800(a).  ECF No. 7.  The Court

deferred ruling on this motion pending a response, and the Respondent

was ordered to file a response.  ECF Nos. 8, 12.  A response was filed on July 14, 2015, with exhibits, ECF No. 13, and on September 1, 2015, the motion for stay was denied.  ECF No. 14.  Respondent was again directed to file an answer, motion, or other response to the § 2254 petition, and an answer with exhibits was filed on April 7, 2016.  ECF No. 26.  Petitioner filed a reply on April 25, 2016.  ECF Nos. 14, 28.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief and this amended § 2254 petition should be denied.

## Background and Procedural History

Petitioner was charged in the Fourteenth Judicial Circuit, Bay County, Florida, by Second Amended Information as follows: Count 1 – second-degree murder of Mikel Jermaine Middleton on or about January 15, 2011, by shooting him with a firearm in violation of sections 782.04(2) and

790.001, Florida Statutes; Count II – attempted second-degree murder of Dquan Dolby on that same date, by shooting him with a firearm; Count III – third-degree murder of Middleton on that same date by effecting his death while acting as a principal in the purchase of marijuana with Kendal Martin, in violation of sections 782.04 and 893.13(2)(a), Florida Statutes; and, Count IV – unlawfully taking marijuana, having value, from the person or custody of Mikel Jermaine Middleton, with the intent to permanently deprive him of the property by force, violence, assault, or putting in fear, and in the course of the offense, Johnson and Kendal Martin were in possession of and carried a firearm, in violation of sections 812.014(2)(c), 812.13(1), (2)(a), and 790.001, Florida Statutes.  Ex. A at 12-14.  The State filed a notice of Habitual Felony Offender Status.  Ex. A at 17.

A jury trial was held on October 24, 2011, at which both Kendal Martin and Petitioner, among others, testified.  Ex. E, F, G. H.[1]  Petitioner was found guilty of second-degree murder, attempted second-degree murder and armed robbery, and not guilty of third-degree murder.  By special interrogatory, the jury found that Petitioner was in actual possession of a firearm, but did not discharge it.  Ex. A at 72-73.  He was sentenced as

---

[1] Citations to the state court record, "Ex. –," refer to exhibits A through DD submitted with Respondent's answer, ECF No. 26, unless otherwise indicated.

a habitual felony offender to life in prison for second-degree murder, thirty years for attempted second-degree murder, and life in prison for armed robbery, all to be served consecutively.  Ex. A at 113-121.  After trial, the court granted, in part, Petitioner's motion to correct illegal sentence, making the sentences concurrent.  Ex. I at 317-25.

Petitioner, with counsel, appealed his convictions and sentences to the state First District Court of Appeal, raising four claims of error.[2]  The district court of appeal affirmed per curiam without written opinion on May 3, 2013.  Ex. N.  The mandate was issued on May 21, 2013.  Ex. O. Petitioner's pro se motion for rehearing filed May 22, 2013, was denied on July 5, 2013.  Ex. P.  *See* Johnson v. State, 111 So. 3d 884 (Fla. 1st DCA 2013) (table).

Petitioner filed his first motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850 on December 16, 2013.[3]  Ex. Q. at 1-13.

---

[2] Petitioner claimed on appeal that : (1)The trial court erred in giving the principals instruction as it related to counts one and two; (2) The trial court erred in refusing to instruct the jury on possession of a firearm during the commission of a felony following a jury question; (3) The sentence of life is disproportionate with that given the co-defendant; and (4) The evidence was insufficient to prove Petitioner acted as a principal in crimes of second-degree murder and attempted second-degree murder.  Ex. L.

[3] Petitioner raised the following post-conviction claims: (1) Ineffective assistance of trial counsel (IAC) in failing to fully cross-examine State's key witness; (2) IAC in failing to raise or preserve meritorious issues at trial regarding error in jury instruction on "possession of a firearm" and insufficiency of evidence to prove Petitioner was a principal in charges of second-degree murder and attempted second-degree murder; (3) IAC in failing to get a gunshot residue test of the co-defendant and the clothing worn in

The trial court denied the motion on March 4, 2014, Ex. Q, and Petitioner appealed to the state First District Court of Appeal. Ex. R. The district court of appeal affirmed per curiam without written opinion on July 18, 2014, and issued the mandate on August 13, 2014. Ex. S, T. *See* Johnson v. State, 147 So. 3d 985 (Fla. 1st DCA 2014) (table).

Petitioner filed a motion to correct illegal sentence on April 23, 2014, challenging the habitual offender designation. Ex. U. at 1-12. The motion was dismissed as procedurally barred on September 10, 2014, Ex. U at 15-16, and Petitioner appealed. The district court of appeal affirmed per curiam without opinion on January 14, 2015, and the mandate was issued on March 10, 2015. Ex. Y. *See* Johnson v. State, 158 So. 3d 568 (Fla. 1st DCA 2015) (table).

Petitioner filed a second motion for post-conviction relief under Rule 3.850 on May 22, 2014.[4] Ex. Z at 1-25. The motion was dismissed as improperly successive, Ex. AA at 201-302, and Petitioner appealed. Ex.

---

the incident in light of Petitioner's negative test result; (4) IAC in failing to argue evidence was insufficient to prove Petitioner was a principal in armed robbery; and (5) IAC in failing to challenge the habitual offender designation. Ex. Q at 1-10.

[4] The successive Rule 3.850 motion alleged: (1) IAC in failing to move to exclude the principals charge to murder and armed robbery in light of co-defendant's conviction for third-degree felony murder; (2) IAC in not moving to dismiss murder charges and apply the principals charge only to third-degree felony murder; and (3) IAC in not moving to dismiss armed robbery charge and apply the principals charge to third-degree felony murder. Ex. Z at 6-17.

BB.  The state district court of appeal affirmed per curiam without written opinion on January 8, 2015.  Ex. DD.  *See* Johnson v. State, 156 So. 3d 1080 (Fla. 1st DCA 2015) (table).

Petitioner filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court raising the following grounds for relief:

> (1) Petitioner was denied his rights under the Eighth and Fourteenth Amendments when he received a disproportionate life sentence and his co-defendant "triggerman" received only fifteen years in prison.  ECF No. 1 at 5.

> (2) Petitioner's Sixth and Fourteenth Amendment rights were violated when the trial court erred in giving the principals instruction as it related to counts I and II of the Information. ECF No. 1 at 6.

> (3) Petitioner was deprived of his Fourteenth Amendment rights when the trial court erred in refusing to instruct the jury on the law dealing with possession of a firearm during the commission of a felony following a jury question; and he was deprived of his Sixth Amendment rights when trial counsel rendered ineffective assistance by failing to object.  ECF No. 1 at 8.

> (4) Petitioner's Due Process right was violated because his sentence is disproportionate to that of the co-defendant who was more culpable.  ECF No. 1 at 9.

> (5) Trial counsel rendered ineffective assistance by failing to argue lack of evidence to prove Petitioner was a principal to second-degree murder and attempted second-degree murder. ECF No. 1 at 10.

> (6) Trial counsel rendered ineffective assistance by failing to fully cross-examine the State's key witness at trial.  ECF No. 1 at 11.

> (7) Trial counsel was ineffective in failing to raise or preserve meritorious issues relating to what constitutes "possession of a firearm" and whether there was competent

substantial evidence to support the finding that Petitioner acted as a principal in the offenses charged. ECF No. 1 at 13.

(8) Trial counsel rendered ineffective assistance by failing to get a gunshot residue (GSR) test of the co-defendant and the clothing worn during the offense in light of Petitioner's negative GSR test. ECF No. 1 at 14.

(9) Trial counsel was ineffective in failing to argue the evidence was insufficient to prove Petitioner acted as a principal in the crime of armed robbery. ECF No. 1 at 15.

(10) Trial counsel rendered ineffective assistance by failing to challenge Petitioner's qualification for habitual felony offender designation. ECF No. 1 at 17.

(11) Petitioner was deprived of Due Process by being sentenced as a habitual felony offender. ECF No. 1 at 18.

(12) Trial counsel rendered ineffective assistance by failing to move to exclude the principals instruction to the second-degree murder, attempted second-degree murder, and armed robbery charges and apply the instruction only to third-degree felony murder. This failure also deprived Petitioner of due process. ECF No. 1 at 20.

(13) Trial counsel was ineffective in failing to file a motion to dismiss the second-degree murder charge and the attempted second-degree murder charge, and failing to seek to apply the principals charge only to third-degree felony murder because Petitioner can only be guilty of the crime his co-defendant was convicted of—third-degree felony murder. ECF No. 1 at 21.

(14) Trial counsel was ineffective in failing to file a motion to dismiss the armed robbery charges and apply the principals instruction only to third-degree felony murder. ECF No. 1 at 22.

(15) Petitioner was deprived of Due Process when the trial court dismissed his Rule 3.800(a) motion. ECF No. 1 at 24.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody only under certain specified circumstances.  Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

"A state-court decision will . . . be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent."  Williams v. Taylor, 529 U.S. 362, 406 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies

the correct governing legal principle from this Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Id.*

at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief

does not mean the state court's contrary conclusion was unreasonable."

Harrington v. Richter, 562 U.S. 86, 102 (2011).  The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a
> complete bar on federal-court relitigation of claims already
> rejected in state proceedings. . . .  It preserves authority to
> issue the writ in cases where there is no possibility fairminded
> jurists could disagree that the state court's decision conflicts
> with this Court's precedents.  It goes no further.  Section
> 2254(d) reflects the view that habeas corpus is a "guard against
> extreme malfunctions in the state criminal justice systems," not
> a substitute for ordinary error correction through appeal.
> Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J.,
> concurring in judgment).  As a condition for obtaining habeas
> corpus from a federal court, a state prisoner must show that the
> state court's ruling on the claim being presented in federal court
> was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted).  The federal court employs a " 'highly

deferential standard for evaluating state-court rulings, which demands that

state-court decisions be given the benefit of the doubt.' " Pinholster, 563

U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

"Before a federal court may grant habeas relief to a state prisoner,

the prisoner must exhaust his remedies in state court." O'Sullivan v.

Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  The Petitioner

must have apprised the state court of the federal constitutional claim, not

just the underlying facts of the claim or a "somewhat similar state-law

claim."  Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting

Anderson v. Harless, 459 U.S. 4, 5-6 (1982)).  In order for remedies to be

exhausted, "the petitioner must have given the state courts a 'meaningful

opportunity' to address his federal claim."  Preston v. Secretary, Florida

Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v.

Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)).  Petitioner must "fairly

present" his claim in each appropriate state court in order to alert the state

courts to the federal nature of the claim.  Duncan v. Henry, 513 U.S. 364,

365 (1995); Picard v. Connor, 404 U.S. 270, 275 (1971).

     In order to obtain review where a claim is unexhausted and, thus,

procedurally defaulted, the Petitioner must show cause for the default and

prejudice resulting therefrom or a fundamental miscarriage of justice.

Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993).  In order to demonstrate

cause, Petitioner must show that an "external impediment, whether it be

governmental interference or the reasonable unavailability of the factual

basis for the claim, must have prevented petitioner from raising the claim."

Alderman v. Zant, 22 F.3d 1541, 1551 (1994) (citing Murray v. Carrier, 477

U.S. 478, 488 (1986)); *see also* McCleskey v. Zant, 499 U.S. 467, 497 (1991) (emphasizing that the external impediment must have prevented the petitioner from raising the claim).  A federal court may grant a habeas petition on a procedurally defaulted claim without a showing of cause or prejudice if necessary to correct a fundamental miscarriage of justice. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).  In order to satisfy the miscarriage of justice exception, the Petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327 (1995) (quoting Carrier, 477 U.S. at 496).

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  Pinholster, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record.  *See* 28 U.S.C. § 2254(e)(1).

For claims of ineffective assistance of counsel, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second,

> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate

deficient performance, a "defendant must show that counsel's performance

fell below an objective standard of reasonableness."  *Id.* at 688.  Counsel is

"strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."

Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at

690).  Federal courts are to afford "both the state court and the defense

attorney the benefit of the doubt."  *Id.* at 13.  The reasonableness of

counsel's conduct must be viewed as of the time of counsel's conduct.  *See*

Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at

690).

   To demonstrate prejudice under Strickland, a defendant "must show

that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different."  466 U.S. at

694.  "A reasonable probability is a probability sufficient to undermine

confidence in the outcome."  *Id.*  For this Court's purposes, "[t]he question

'is not whether a federal court believes the state court's determination'

under the Strickland standard 'was incorrect but whether that determination

was unreasonable—a substantially higher threshold.' " <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quoting <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007)).  "And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." <u>Mirzayance</u>, 556 U.S. at 123. It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard." *Id.*

### <u>Ground 1: Disproportionate Sentence</u>

Petitioner contends in his first claim that he was denied his rights under the Eighth and Fourteenth Amendments because his life sentence was disproportionate when compared to the fifteen-year sentence his co-defendant received.  ECF No. 1 at 5.  This argument was presented in Petitioner's sentencing hearing, Ex. D at 271, in his motion to correct illegal sentence, Ex. I at 277, and on direct appeal from his convictions and sentences.  Ex. L at 40.  Petitioner bases this claim on the fact that he and his co-defendant, Kendal Martin, were both charged with second-degree murder, attempted second-degree murder, third-degree murder, and armed robbery.  Martin entered a negotiated plea to third-degree murder and received a sentence of fifteen years in prison.  Ex. E at 70-71.  Petitioner

went to trial and was convicted of second-degree murder, attempted second-degree murder and armed robbery, and sentenced to life in prison.

At Petitioner's trial, Martin testified that he and Petitioner were renting an apartment together and, on the day of the shooting, they needed rent money.  Ex. E at 60-64.  He testified that Petitioner, a drug dealer, set up a purported drug deal with Mikel Middleton and arranged to meet at a local Walmart.  Ex. E at 65.  Martin testified that Petitioner actually planned to rob Middleton of money and marijuana, and he and Petitioner went to the Walmart to meet Middleton.  Ex. E at 58, 64.  It was Martin's belief that Middleton was in a gang called "Folk Nation."  Ex. E at 93.  He said Petitioner was affiliated with the gang called "Bloods."  Ex. E at 94.

Once at Walmart, Martin and Petitioner made contact with Middleton and went to the parking lot where they got into Middleton's vehicle.  Martin said he did not know Middleton and the other individual, Dolby.  Ex. E at 63.  Petitioner and Martin got into the back seat of Middleton's car, while Middleton was in the driver's seat and Dolby was in the front passenger seat.  Ex. E at 58.  Martin said Petitioner sat behind Dolby and they drove away.  Ex. E at 66.  After arriving at the location where the shooting occurred, Bob Little Road and East Fourth Street in Callaway, Bay County, Florida, Martin was waiting for Petitioner to pull out the gun and announce it

was a robbery.  Ex. E at 67.  Martin said he was handed 28 grams of

marijuana by Middleton, which he gave to Petitioner.  Ex. E at 90.  Martin

testified that Petitioner did not announce a robbery, but began firing shots

at Middleton and Dolby.  Ex. E at 58.  After the shots were fired, Martin

exited on the other passenger side because his door was locked.  He

testified that Petitioner ran down the street, and when Martin caught up to

him back at their apartment, he asked Petitioner what happened.  He said

Petitioner "told me he had shot Dquan Dolby and Mike Smalls [nickname

for Middleton].  And I asked him why and he said because he had a beef

with him" and that "Mike Smalls was a snitch anyway."  Ex. E at 68-69.

Martin said Petitioner told him he was sending a message to others with

whom Petitioner had a disagreement.  Ex. E at 69.  Martin said Petitioner

had the marijuana in his pocket and they shared it when they got home.

Ex. E at 90.  Martin denied that he ever told anyone that he shot Middleton.

Ex. E at 98.

In Petitioner's statements to Bay County Sheriff's Office investigator

Llorenz, made after Miranda warnings, Petitioner said Middleton called him

and said he had some marijuana.  Petitioner said, ". . . told my man.  He

called him from my phone, set up where he wanted to meet him at."  Ex. E

at 139.  He identified "my man" as Martin.  Petitioner told Llorenz that when

they were in the car, Martin fired one shot and Petitioner got out of the car and started running away.  He said he heard several more shots.  Ex. E at 139; 164.  Petitioner said when he met with Martin later at the apartment, Martin said not to tell anyone and as long as both are dead it will be okay. Ex. E at 140-41.  Petitioner said he did not know Middleton well enough to want him dead.  Ex. E at 141.  Petitioner also told the investigator that the gun used was probably the one he got from the mother of his child, which he stored in a closet in the apartment.  The gun was found in the backyard of a residence near Petitioner and Martin's apartment.  Ex. F at 199.  The gun had duct tape wrapped around the handle, which Petitioner discussed in his statement to Llorenz, telling him he put duct tape on the gun because of "fingerprints."  Ex. E at 169.  In a separate statement to the investigator, Petitioner said that he was sitting in the back seat of Middleton's car behind the passenger and Martin was sitting behind the driver.  Ex. E at 149.

Dquan Dolby, who was wounded in the shooting, testified at trial that he was just riding around with Middleton that day and went to the Walmart with him.  Ex. G at 346.  He testified that the two men got into the back seat and after the marijuana was passed back to them, and after a delay or four or five minutes, the shooting started.  Ex. E at 345-46.  He said the person doing the shooting was the one sitting behind his passenger seat.  Ex. G at

347.  Petitioner testified at trial and said that the statements he had given to the Sheriff's investigator were accurate.  Ex. G at 419.  Petitioner was found guilty of second-degree murder, attempted second-degree murder, and armed robbery.  Ex. A at 72-73.  In a "Further Findings" section of the verdict form, the jury found that Petitioner possessed a firearm but did not discharge it.  Ex. A at 73.

At the sentencing hearing, when defense counsel asked the trial court to sentence Petitioner to the same fifteen-year sentence Kendal Martin received, the State pointed out that Martin had no criminal record, contrary to Petitioner's record of several prior felony convictions.  Ex. D at 271, 263. The trial court found that Petitioner qualified for habitual felony offender sentencing.  Ex. D at 264.  The State also noted that the offenses in this case occurred just several years after Petitioner had been released from prison.  Ex. D at 271.  Further, the trial court found that the jury's additional finding that the State did not prove beyond a reasonable doubt that Petitioner discharged the firearm did not necessarily mean that a jury would have found beyond a reasonable doubt Martin was the triggerman.  Ex. D at 269-70.

Petitioner appealed, and while the appeal was pending Petitioner filed a motion to correct sentence in which he contended, in part, that the

sentence was unconstitutionally disproportionate to that given to his co-defendant. Ex. I at 277. The trial court granted a resentencing, but denied the proportionality claim. Ex. K at 337. The trial court resentenced Petitioner to the same prison terms, but ordered they run concurrently rather than consecutively. Ex. K at 337. On direct appeal from the convictions and sentences, the state First District Court of Appeal affirmed without discussion. Ex. N.

For federal habeas relief in this Court, Petitioner has the burden of demonstrating that the state courts' adjudication was contrary to, or involving an unreasonable application of, federal law as determined by the Supreme Court, or resulted from an unreasonable determination of the facts. *See* § 2254(d). Petitioner has not met his burden.

Eighth Amendment proportionality as defined by the United States Supreme Court refers to the evaluation of the appropriateness of a sentence for a particular crime. Pulley v. Harris, 465 U.S. 37, 42-43 (1984). Petitioner argues instead that his sentences are disproportionate in light of his co-defendant's sentence. The United States Supreme Court has not recognized a constitutional right to a sentence proportionate to one's co-defendant. *See id.* at 43 (rejecting the argument that the Constitution demands a comparative proportionality review that "purports to inquire . . .

whether the penalty is . . . unacceptable in a particular case because [it is] disproportionate to the punishment imposed on others convicted of the same crime."); McCleskey v. Kemp, 481 U.S. 279, 306-07 (1987) (holding that the federal habeas petitioner cannot "prove a constitutional violation by demonstrating that other defendants who may be similarly situated did *not* receive the [same] penalty.").[5]

The Eleventh Circuit held in Bush v. Singletary, 99 F.3d 373, 375 (11th Cir. 1996), that a comparative review for proportionality of a petitioner's sentence with that of a co-defendant does not implicate the federal constitution. *See also* Hendriex, II v. Tucker, 2012 WL 1560459, at *2 (N.D. Fla. Mar. 26, 2012) ("The Supreme Court has not recognized a federal constitutional right to a sentence proportionate to one's co-defendant."), adopted 2012 WL 1559699 (N.D. Fla. May 3, 2012) (unpublished). The Eleventh Circuit has also directed the district courts to refuse requests to perform review of proportionality of sentences between defendants. Mills v. Singletary, 161 F.3d 1273, 1282 (11th Cir. 1998).

Moreover, Petitioner's circumstances and those of his co-defendant are not equivalent. The Eleventh Circuit has noted that a defendant who

---

[5] States, however, have been held to have great latitude in the area of proportionality review in death penalty cases. *See* Getsy v. Mitchell, 495 F.3d 295, 306 (6th Cir. 2007).

proceeds to trial is not similarly situated to a co-defendant who cooperates with the government and enters a plea agreement.[6]  United States v. Estrella, 518 F. App'x 922, 828 (11th Cir. 2013) (unpublished).  The Court also noted that to be similarly situated, the co-defendants must have similar backgrounds and similar criminal histories.  *Id.* at 828-29.

In this case, co-defendant Martin entered a plea and was convicted and sentenced for third-degree felony murder.  He cooperated with the State by testifying and he did not have a criminal history, as did Petitioner. A comparative proportionality review between Petitioner's sentences for conviction of second-degree murder, attempted second-degree murder, and armed robbery in this habeas proceeding is not required by federal law, and relief based on any such a review would not be appropriate, in any event, due to the dissimilarity in the co-defendants' circumstances. Petitioner has not shown that he has met the requirements of § 2254(d) and relief on Ground 1 should be denied.

## Ground 2: Jury Instruction as to Principal

Petitioner contends that his Sixth and Fourteenth Amendment rights were violated when the trial court erred by giving the principals jury

---

[6] *See* 18 U.S.C. § 355(a)(6) federal sentencing factors, providing that the court shall consider the need to avoid "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

instruction as it related to Counts I and II of the Information.  ECF No. 1 at 6.  A similar issue, albeit based on state law grounds, was raised at trial by defense counsel when he objected to the giving of the instruction on principals as to Counts I and II based on lack of support in the evidence.  Ex. G at 468.  The trial court denied the objection, concluding there was sufficient evidence to support the principals instruction.  On direct appeal of this claim, the state First District Court of Appeal affirmed without explanation.  Ex. N.  Petitioner argued on direct appeal that the instruction should not have been given because it had no factual basis in the record.  Ex. L at 35.  Petitioner did not allege a constitutional claim in the state courts.

As noted earlier, "[b]efore a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."  O'Sullivan, 526 U.S. at 842; 28 U.S.C. § 2254(b).  This requires that Petitioner "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature of the claim.  Duncan, 513 U.S. at 365-66.  This exhaustion requirement includes "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan, 526 U.S. at 845.  "This rule of comity reduces friction between the state and federal court

systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." O'Sullivan, 526 U.S. at 845.

The Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law claim." Harless, 459 U.S. at 6. Petitioner must have provided the state courts with a " 'fair opportunity' to apply controlling legal principles to the facts bearing on his constitutional claim." *Id.* at 5 (quoting Picard, 404 U.S. at 276). Petitioner did not apprise the state courts of the federal nature of his claim or its constitutional basis and thus has failed to exhaust this claim as required by the Supreme Court and 28 U.S.C. § 2254(b). Petitioner cannot now return to state court to exhaust this federal claim, and has failed to show cause and prejudice to overcome this procedural bar. In his reply, Petitioner makes the statement that he "relies on actual innocence," although he does not expressly indicate that he seeks for his default to be excused based on manifest injustice and actual innocence. *See* ECF No. 28 at 3.

A federal court may grant a habeas petition on a procedurally defaulted claim without a showing of cause or prejudice if it is necessary to

correct a fundamental miscarriage of justice.  <u>Henderson</u>, 353 F.3d at 892.

To demonstrate a "fundamental miscarriage of justice," Petitioner must

show that a constitutional violation has occurred that "probably resulted in a

conviction of one who is actually innocent," and requires a showing that it is

"more likely than not that no reasonable juror would have convicted him."

*See* <u>Schlup</u>, 513 U.S. at 327.  This is a stronger showing than is necessary

to establish prejudice, and "thus ensures that petitioner's case is truly

'extraordinary.' "  *Id.* (citing <u>McCleskey</u>, 499 U.S. at 494).  "[A] substantial

claim that constitutional error has caused the conviction of an innocent

person is extremely rare . . . ."  <u>Schlup</u>, 513 U.S. at 324.

Petitioner has not provided any federal precedent to show that the

giving of the principals instruction in the face of insufficient evidence to

support it is a constitutional violation.  Thus, he has failed to satisfy the first

prong of the "manifest justice" test.  Moreover, Petitioner alleges actual

innocence, but has not alleged facts to support this conclusory allegation.

Accordingly, Petitioner has not demonstrated that a constitutional violation

more likely than not resulted in the conviction of one who is actually

innocent.  In order to traverse the "gateway" through which a habeas

petitioner must pass to have an otherwise barred constitutional claim

considered on the merits, the evidence of actual innocence must be "so

strong that a court cannot have confidence in the outcome of the trial." *Id.* at 315.  That showing has not been made.  It is therefore impossible for the Court to find manifest injustice has been shown.  For these reasons, this claim is due to be denied as procedurally defaulted.  Regardless of any default, however, the claim is without merit.

At trial, defense counsel objected to the giving of the instruction on principals as to Counts I and II based on lack of support in the evidence. Ex. G at 468.  After all the specific instructions were given for each of the four counts charged and the related lesser included offenses, the principals instruction given to the jury was as follows:

> If Jason A. Johnson helped another person or persons commit, attempt to commit, a crime, Jason A. Johnson is a principal and must be treated as if he had done all of the things the other person did if, one, Jason A. Johnson had a conscious intent that the criminal act be done.  And, two, Jason A. Johnson did some act or said some word which was intended to and which did insight (sic), cause, or encourage, or assist, or advise the other person or persons to actually commit or attempt to commit the crime.
> To be a principal the defendant does not have to be present when the crime is committed or attempted.

Ex. H at 548.  *See* Fla. Std. Jury Instr. (Crim.) 3.5(a), Principals.

Under Florida law, the trial court's decision to give or withhold a jury instruction is reviewed for abuse of discretion.  A trial court has wide discretion in instructing the jury, and the court's decision regarding the

charge to the jury is reviewed in state court with a presumption of correctness. <u>Card v. State</u>, 803 So. 2d 613, 624 (Fla. 2001) (citing <u>James v. State</u>, 695 So. 2d 1229, 1236 (Fla. 1997)); *see also* <u>Parker v. State</u>, 873 So. 2d 270, 294 (Fla. 2004) (noting that trial court's decision to give or deny a jury instruction would be reviewed for abuse of discretion). The initial determination of the applicable substantive law in each case should be made by the trial judge and the judge is charged with correctly instructing the jury in each case. <u>Matter of Use by Trial Courts of Standard Jury Instructions in Criminal Cases</u>, 431 So. 2d 594, 598 (Fla. 1981).

This allegation of improper jury instruction is a state law issue and Petitioner has not shown that the trial court's giving the standard instruction on principals, without adding a special instruction limiting it to any specific counts, was an abuse of discretion. Moreover, the state First District Court of Appeal affirmed, thus rejecting the claim that reversible error occurred in regard to the principals instruction. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). *See also* <u>Swarthout v. Cooke</u>, 562 U.S. 216, 221 (2011) ("[W]e have long

recognized that 'a "mere error of state law" is not a denial of due process.' "
(quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982))).

In addition, the evidence was sufficient to justify the principals instruction being given in relation to all the charged offenses. In Barron v. State, 990 So. 2d 1098 (Fla. 3d DCA 2007), the Florida court held that "[f]elons are generally held responsible for the acts of their co-felons." *Id.* at 1104. " 'One who participates with another in a common criminal scheme is guilty of all crimes committed in furtherance of that scheme regardless of whether he or she physically participates in that crime.' " *Id.* at 1104 (quoting Lovette v. State, 636 So. 2d 1304, 1306 (Fla. 1994) (quoting Jacobs v. State, 396 So. 2d 714, 716 (Fla. 1981))). The court explained that if the defendant is a principal in a criminal enterprise, then he is responsible for a homicide committed in the course of that criminal enterprise even if he had no intent to kill the victim. *Id.* Based on this principle, the court in Barron upheld the defendant's conviction for the attempted second-degree murder that was committed by a co-felon. The defendant in Barron was a participant with three others in the common scheme to rob the victim. The court noted that the attempted murder in Barron occurred during the commission of the attempted robbery because it occurred when the defendants attempted to flee and to prevent

identification.[7]  *Id.* at 1106.  *See also* <u>Williams v. State</u>, 261 So. 2d 855,

856 (Fla. 3d DCA 1972) (affirming the defendant's conviction for second-

degree murder where the co-perpetrator shot and killed the victim during

the commission of a robbery that both the defendant and co-perpetrator

had planned to commit); <u>Diaz v. State</u>, 600 So. 2d 529, 530 (Fla. 3d DCA

1992) ("Diaz was [ ] clearly liable for any acts, whether he knew of them

ahead of time or not, committed by an accomplice in the furtherance of that

offense . . . .").

In the present case, evidence was presented that Petitioner and

Martin agreed and planned to rob Middleton.  Evidence was presented that

both needed money for rent; both went to Walmart dressed in black; and

both used Petitioner's telephone to contact the victims.  Ex. G at 471; Ex. E

at 65, 125.  Evidence was presented that Martin and Petitioner both went to

the Walmart to meet Middleton with the intent to rob him.  Ex. E at 64-65.

---

[7] The Court in <u>Barron</u> explained that conviction for attempted second-degree murder based on the principals theory is distinguishable from the crime of attempted second-degree <u>felony</u> murder.  Second-degree felony murder, or an attempted second-degree felony murder, is charged under section 782.04(3), Florida Statutes, and occurs only when the person who kills the victim is someone other than a co-perpetrator.  The defendant in <u>Barron</u>, as was Petitioner in this case, was charged under section 782.04(2), Florida Statutes, which contains different elements from second-degree felony murder.  <u>Barron</u>, 990 So. 2d at 1107.  Petitioner was convicted of second-degree murder and attempted second-degree murder.  The jury was instructed on the principals theory, which was supported by evidence of the common scheme to rob the victim, which scheme resulted in the shooting of the victims.

Martin testified it was Petitioner who directed Middleton to drive away from Walmart to the location where the shooting occurred.  Ex. at 66.  He said Petitioner told him he had a "beef" with Middleton, Ex. E at 61, and he wanted to send a message to some other people he had a disagreement with.  Ex. E at 69.

Although the evidence was in dispute over who pulled the trigger, the gun used in the shooting belonged to Petitioner and was stored in a closet in the residence he shared with Martin.  Sherrod Wilson, who was acquainted with Petitioner and Middleton, testified that Petitioner told him several months before the incident that because Middleton had done something or said something to Petitioner's girlfriend, Petitioner was "going to get him."  Ex. F at 325.  Wilson also testified that Petitioner regularly carried the firearm that killed Middleton.  Ex. E at 324.

Evidence was presented that Petitioner carried his own gun during the crime, and that Petitioner took Middleton's marijuana away with him after the shooting and later shared it with Martin.  In this common criminal scheme, it was not unforeseeable that a shooting could occur either to effect the crime or to hinder identification of the perpetrators after the crime. Under Florida law, the principals instruction was applicable to all the offenses charged.  The trial court did not abuse its discretion in refusing to

give a special instruction limiting the principals instruction only to armed robbery.

Even where the claim is that the jury instruction was incorrect under state law, federal habeas relief is not generally available. Applewhite v. Sec'y, Dep't of Corr., 373 F. App'x 969, 972 (11th Cir. 2010) (unpublished) (citing Estelle v. McGuire, 502 U.S. 62, 71-72 (1991)). "A defective jury charge raises an issue of constitutional dimension only if it renders the entire trial fundamentally unfair." Carrizales v. Wainwright, 699 F. 2d 1053, 1055 (11th Cir. 1983). Petitioner has not demonstrated that the principals instruction, even if erroneously given as to Counts I and II, rendered the entire trial fundamentally unfair.

This state-law claim was decided against Petitioner by the state courts, which adjudication is entitled to AEDPA deference in this proceeding. It is also one which Petitioner failed to present as a federal claim in the state courts. For all these reasons, Petitioner has failed to demonstrate that the state courts' adjudication is contrary to, or involving an unreasonable application of, federal law, as determined by the United States Supreme Court. Nor has he demonstrated that the adjudication is based on an unreasonable determination of the facts in light of the state court record. Relief on Ground 2 should be denied.

## <u>Ground 3: No Instruction on Possession of Firearm</u>

Petitioner next contends that he was deprived of his Fourteenth Amendment right to due process when the trial court failed to instruct the jury, following a jury question, on the law dealing with possession of a firearm during the commission of a felony.  ECF No. 1 at 8.  He also contends he was deprived of his Sixth Amendment rights when trial counsel "allowed the trial court to do so."  ECF No. 1 at 8.

At trial, during deliberations, the jury sent out a question asking: "Does possession of weapon mean at the time of crime or general ownership?"  Ex. H at 615.  The judge and trial counsel agreed to respond that the jury must rely on the instructions previously given.  Ex. H at 616. On direct appeal from his convictions and sentences, Petitioner raised as fundamental error the claim that the trial court erred in failing to instruct the jury on the meaning of "possess" after the jury tendered the question.  Ex. L at 38-39.  The state First District Court of Appeal affirmed per curiam without explanation.  Ex. N.  In his initial Rule 3.850 motion, Petitioner alleged that his trial counsel rendered ineffective assistance by failing to preserve for appeal the issue of the lack of an instruction on the meaning of "possession" of a firearm.  Ex. Q at 4.  The post-conviction court summarily denied the claim.  Ex. Q at 19.

The post-conviction court set forth its reasoning why the claim lacked merit by explaining that Petitioner was charged with second-degree murder and attempted second-degree murder, and that the jury was given the complete standard jury instructions for each of those offenses.  Ex. Q at 20. The court explained that the only offense category calling for a finding of possession of a firearm as an element of a charged offense was armed robbery, which alleged that Martin and Petitioner "were in possession of and carried a firearm."  Ex. A at 14.  The jury convicted Petitioner of armed robbery as charged, thus finding that he was "in possession of and carried a firearm."  The post-conviction court further explained the verdict form and findings as follows:

> Otherwise, the issue of whether the Defendant actually possessed a firearm was more of an issue with respect to whether he was subject to enhanced sentencing under the 10-20-Life Statute, § 775.087(2)(a), Fla. Stat.  At the end of the verdict form, there was a 'further findings' section, where the jury was to make findings on whether the Defendant possessed a firearm or discharged one.  However, these findings were not necessary to finding him guilty of any of the charged offenses; rather, they were only to be made *if* he was already found guilty of any of the charged offenses, for purposes of the 10-20-Life Statute.

Ex. Q at 20-1.  The court concluded that the jury was given complete jury instructions for each of the offenses, and that the term "possess" is an ordinary term requiring no additional instruction.  Ex. Q at 21.  Thus, the

state court found that trial counsel was not deficient in failing to object to any further instruction or in failing to request an additional instruction defining "possess" for the jury.  Ex. Q at 21.  Finally, the post-conviction court noted that Petitioner was sentenced as a habitual felony offender and not under the "10-20-Life" statute to which the "Further Findings" interrogatory pertained.  *Id.*

Section 775.087(2)(a)1, Florida Statutes, provides that any person who is convicted of an enumerated felony, including murder and robbery, "and during the commission of the offense, such person actually possessed a 'firearm' or 'destructive device' as those terms are defined in s. 790.001, shall be sentenced to a minimum term of imprisonment of 10 years, . . ."  The Florida Supreme Court has promulgated a standard jury instruction on the possession of a firearm during the commission of an identified felony in implementation of this statute.  Florida Standard Jury Instruction 3.3(d) (Crim.) Possession of a [Firearm] [Destructive Device] [and Discharge] [Causing [Great Bodily Harm] [Death]], implementing section 775.087(2), Florida Statutes, provides an instruction covering the question of possession and discharge of a firearm during commission of an identified felony, in pertinent part as follows:

### 3.3(d) (Crim.) Possession of a [Firearm] [Destructive Device] [and Discharge] [Causing [Great Bodily Harm] [Death]]

. . . .

*Give if applicable.*

. . . .

If you find that (defendant) committed (felony listed in § 775.087(2)(a)1, Fla. Stat.) and you also find beyond a reasonable doubt that during the commission of the crime, [he] [she] actually possessed [a firearm] [destructive device], you should find the defendant guilty of (felony) with actual possession of a [firearm] [destructive device].

A ["firearm"] ['destructive device"] is legally defined as (adapt from § 790.001(4) or § 790.001(6) Fla. Stat.).

*Give a or b or both as applicable.  See § 775.087(4), Fla. Stat.*

To "actually possess" a firearm means that the defendant

a.    carried a firearm on [his] [her] person.

   or

b.    had a firearm within immediate physical reach with ready access with intent to use the firearm during the commission of the crime.

Therefore, there is a Florida standard jury instruction that addresses the questions presented in the "Further Findings" section of the verdict form used in this case.  *See* Ex. A at 73.  The trial court did not propose to give this instruction and trial counsel did not request it.

The post-conviction court denied this claim of ineffective assistance of counsel, finding that the claim lacked merit because the instructions for the charged offenses were proper and, thus, trial counsel was not

ineffective in failing to request an additional instruction defining possession of a firearm. The court also found that any error relating to findings for the "10-20-Life" sentencing enhancement was irrelevant to this sentence because Petitioner was not sentenced under that statute. The state district court of appeal affirmed.

Respondent provides only a brief response to the claim that trial counsel was ineffective in failing to request the trial court to give an instruction defining "possession" of a firearm. Respondent contends that counsel may have been acting strategically, believing that any confusion over the issue would benefit the defendant. ECF No. 26 at 38. Because the claim was summarily denied, this contention is speculative. Respondent also contends that even if counsel had objected to lack of such an instruction, the claim of error would have been found meritless on appeal because the jury instructions given in the case fairly stated the applicable law. ECF No. 26 at 39.

Petitioner has failed to demonstrate a reasonable probability that, but for the alleged error of trial counsel, the result of the trial, or the appeal, would have been different—a reasonable probability being one sufficient to undermine the court's confidence in the outcome of the trial. Strickland, 466 U.S. at 694. The state courts determined that ineffective assistance

under Strickland had not been shown.  The jury was, as the trial court found, fully instructed as to Counts I, II, and IV with the proper standard jury instructions.  Further, in order to convict Petitioner of armed robbery with a firearm, the jury was instructed that it must find as an element of the offense that during the commission of the robbery Petitioner "carried a firearm."  Ex. H at 547 (jury instructions).  This directive was clear concerning the time during which any possession and carrying of the firearm was alleged to have occurred regarding the armed robbery offense.  Thus, by convicting Petitioner of armed robbery as charged, under the instructions given, the jury found that Petitioner did possess and carry a firearm during the commission of that offense.  The "Further Findings" questions on the verdict form related not to the elements of second-degree murder or attempted second-degree murder but to the "10-20-Life" possible sentencing enhancement.  Because Petitioner received a life sentence based on his habitual offender designation, any prejudice arising out of the jury's lack of an instruction as to the "Further Findings" section has not been shown.

The question is not whether the state courts were correct in finding ineffective assistance has not been proven, but whether the determination was objectively unreasonable in light of the record, which is a higher

threshold.  *See* Mirzayance, 556 U.S. at 123.  A high degree of deference is owed to the state courts in their determinations under Strickland.  *Id.* The jury was fully and correctly instructed as to the element of the offenses for which he was convicted.  The evidence was sufficient for the jury to convict Petitioner of all three counts, and the record supported the life sentence imposed on him as a habitual offender, regardless of any alleged confusion concerning possession of a firearm as it related to the "Further Findings" section of the verdict.

Petitioner has failed to show that the state courts' adjudication of this claim resulted in a decision that is contrary to, or involving an unreasonable application of Strickland or any other federal law as determined by the Supreme Court.  Nor has he shown that the decision was based on an unreasonable determination of the facts as presented in evidence in the state court proceeding.  Ground 3 should be denied.

## Ground 4: Proportionality of Life Sentence

In this ground, Petitioner contends his Fourteenth Amendment Due Process right was violated because his sentence is disproportionate to that of the co-defendant who, he contends, was more culpable.  ECF No. 1 at 9. This claim is virtually the same claim that Petitioner presented in Ground 1 of his petition where he contended, "Appellant's 8th and 14 Amendment

right was violated when a life sentence disproportionate with the crime and the sentence of the co-defendant albeit triggerman to 15 years in prison." ECF No. 1 at 5.

As supporting facts for this claim, Petitioner contends that there was no evidence proving he was a principal and that he received a life sentence because of his criminal record, which qualified him for habitual felony offender designation. *Id.* He contends that he should have been treated the same as Kendal Martin who, Petitioner contends, the jury found to be more culpable. *Id.*

For the same reasons that Ground 1 should be denied, this Ground 4 should also be denied. Petitioner's circumstances and those of Martin were not comparable. Martin, who had no criminal history, entered a plea to third-degree felony murder and was given a sentence proportionate to that crime. Petitioner had several prior felony convictions, Ex. D at 271, 263, and he qualified for habitual felony offender sentencing. Ex. D at 264. The offenses in this case occurred just several years after Petitioner had been released from prison. Ex. D at 271. Further, the trial court found that the jury's verdict finding the State did not prove beyond a reasonable doubt that Petitioner discharged the firearm did not necessarily mean that a jury would have found beyond a reasonable doubt that Martin was the

triggerman.  Ex. D at 269-70.  The offense to which Martin entered a plea was third-degree felony murder, not second-degree murder, attempted second-degree murder, or armed robbery—the offenses for which Petitioner was convicted.

While Petitioner's direct appeal was pending, he filed a motion to correct sentence in which he contended, in part, that the sentence was unconstitutionally disproportionate to that given to his co-defendant.  Ex. I at 277.  The trial court granted a resentencing as to the issue of consecutive sentences, but denied the proportionality claim.  Ex. K at 337.  On direct appeal from the convictions and sentences, the state First District Court of Appeal affirmed without discussion.  Ex. N.  These state court adjudications are entitled to AEDPA deference.

Moreover, as discussed in Ground 1, the Supreme Court has not recognized a constitutional right to a sentence proportionate to one's co-defendant.  *See* Harris, 465 U.S. at 42; *see also* McCleskey, 481 U.S. at 306-07 (holding that the federal habeas petitioner cannot "prove a constitutional violation by demonstrating that other defendants who may be similarly situated did *not* receive the [same] penalty.").  Petitioner has failed to show that the state courts' adjudication of this claim is contrary to, or involving an unreasonable application of federal law, or that it was based

on an unreasonable determination of the facts in light of the evidence in the state court record.  Ground 4 should be denied.

## Ground 5: Counsel's Failure to Argue Insufficient Evidence to Support Principal Instruction as to Murder

Petitioner contends in his § 2254 petition that his trial counsel rendered ineffective assistance by failing to argue the lack of evidence to prove Petitioner was a principal in the offenses of second-degree murder and attempted second-degree murder.  ECF No. 1 at 10; ECF No. 28 at 5.  He contends that the evidence showed Martin acted alone and that the state failed to introduce any evidence that he aided Martin in the commission of the offenses.  ECF No. 1 at 10; ECF No. 28 at 5.  To support this claim, Petitioner notes in his reply that he was acquitted on the charge of third-degree felony murder in the course of a purchase of marijuana.[8]  ECF No. 28 at 5.  This claim was raised in Petitioner's Rule 3.850 motion and summarily denied by the trial court.  Ex. Q at 4, 21.  The state First District Court of Appeal affirmed.  Ex. S.

The post-conviction court denied the claim that counsel was ineffective for failing to argue in the motion for judgment of acquittal that the

---

[8] There was no evidence presented that a <u>purchase</u> of marijuana was completed, so acquittal of Petitioner on this charge did not indicate the jury was finding he was not guilty as principal or perpetrator of the other offenses for which he was convicted.

evidence was insufficient to prove Petitioner acted as a principal in the offenses charged. Ex. Q at 21. The post-conviction court cited evidence that Martin testified Petitioner said he knew someone—Middleton—who they could rob to get marijuana and possibly some money to pay the rent. Ex. E at 64. Martin testified Petitioner had his gun with him and that he shot both victims. Ex. E at 58, 66. Martin said Petitioner told him he had a "beef" with Middleton and set up a meeting at the Walmart. Martin and Petitioner dressed all in black to go to the meeting with Middleton. Ex. E at 178. In addition, Martin testified that after the incident, he and Petitioner split the marijuana and went out for alcohol and cigarettes. Ex. E at 172-87.

As discussed in Ground 2, "Felons are generally held responsible for the acts of their co-felons." Barron, 990 So. 2d at 1104. " 'One who participates with another in a common criminal scheme is guilty of all crimes committed in furtherance of that scheme regardless of whether he or she physically participates in that crime.' " *Id.* (quoting Lovette, 636 So. 2d at 1306). The state court in Barron explained that if the defendant is a principal in a criminal enterprise, then he is responsible for a homicide committed in the course of that criminal enterprise even if he had no intent to kill the victim. *Id.* at 1104; *see also* Williams, 261 So. 2d 855, 856

(affirming the defendant's conviction for second-degree murder where the co-perpetrator shot and killed the victim during the commission of a robbery that both the defendant and co-perpetrator had planned to commit).

Any motion for judgment of acquittal based on lack of evidence that Petitioner acted as a principal in the common criminal scheme to rob Middleton, and was therefore innocent of any murder committed during the course of the robbery, would have lacked merit.  Thus, the trial court correctly determined that trial counsel was not deficient in failing to argue that deficiency as ground for a judgment of acquittal at trial.  Trial counsel is not deficient for failing to make or preserve a meritless claim.  Denson v. United States, 804 F.3d 1339, 1342 (11th Cir. 2015).  Further, even if this issue had been preserved for appeal, there is no reasonable likelihood— measured in terms of undermining confidence in the outcome—that the appellate court would have reversed and ordered Petitioner's discharge. Petitioner's failure to meet his burden under 28 U.S.C. § 2254(d) dooms this ground to failure.  Ground 5 should be denied.

### **Ground 6: Failure to Effectively Cross Examine Martin**

Petitioner next contends that his trial counsel rendered ineffective assistance by failing to fully cross-examine the State's key witness, Kendal Martin, at trial.  ECF No. 1 at 11.  Petitioner raised this claim in his Rule

3.850 motion where he contended that counsel failed to make the jury fully aware of Martin's lies and failed to show specifically how Martin's earlier statements did not match the testimony he gave at trial.  Ex. Q at 3.  The post-conviction court summarily denied the claim and the state district court of appeal affirmed without explanation.  Ex. Q at 17-19; Ex. S.

The post-conviction court concluded that trial counsel was not shown to be ineffective because counsel did conduct a thorough and effective cross examination.  The court stated:

> It is evident from the Defendant's own allegations that trial counsel was able to impeach Martin's testimony on cross-examination by getting Martin to admit that he had lied on more than two occasions and that he only told the truth after accepting a plea deal from the State.  Indeed, the record reflects that trial counsel conducted a thorough and effective cross-examination of Martin.  (T. 72-94)  Contrary to the Defendant's allegations, trial counsel did in fact question Martin with respect to the details concerning his prior untrue statements.  Specifically, trial counsel got Martin to admit that his first statement to law enforcement, in which he stated that he denied any knowledge of the instant offenses, was "just a pack of untruths."  (T. 72-73)  He also got Martin to admit that his second statement to law enforcement, in which he stated that the offenses stemmed from a drug deal gone bad, was also a "pack of untruths."  (T. 73-74)  Finally, he got Martin to admit that he did not tell law enforcement that the offenses stemmed from a planned robbery until after he entered a plea.  (T. 74)  Trial counsel highlighted Martin's prior untrue statements in great detail during both opening and closing statements. (T. 50-52; 495-99)

Ex. Q at 18.  The court also noted that trial counsel got Martin to admit he used Petitioner's cell phone to call Middleton shortly before the criminal incident and that he knew where Petitioner's gun was kept in the hall closet of their joint residence, proving that he had access to it.  Ex. Q at 18 (citing Ex. E at 79, 82-83).  These findings are supported by the trial court record.  The post-conviction court also found that any impeachment counsel could have elicited would have been admissible only for that purpose and not as substantive evidence.  Ex. Q at 19.  Based on these conclusions, the state court found that trial counsel was not shown to be deficient.

As discussed earlier, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " Mirzayance, 556 U.S. at 123 (quoting Schriro, 550 U.S. at 473).  The Strickland standard is a general one; thus, a state court has "even more latitude to reasonably determine that a defendant has not satisfied that standard."  Mirzayance, 556 U.S. at 123.

Because Petitioner has failed to demonstrate that the state courts' adjudication of this claim resulted in a decision that is contrary to, or an unreasonable application of, Strickland or any other federal law as determined by the Supreme Court, he is not entitled to relief under 28

U.S.C § 2254(d)(1).  Nor has Petitioner shown that the decision was based on an unreasonable application of the facts in light of the state court record. Accordingly, habeas relief on Ground 6 should be denied.

## **Ground 7: Counsel's Failure to Raise Meritorious Issues**

Petitioner alleges in this ground that his trial counsel was ineffective in failing to raise or preserve for appeal the meritorious issues relating to (1) what constitutes "possession of a firearm" and (2) the sufficiency of evidence to support the finding that Petitioner acted as a principal in the offenses charged.  ECF No. 1 at 13.

Both subparts of the claim should be denied on the merits.  Failure to preserve a claim for appellate review has been held not to demonstrate prejudice as is required under the second prong of Strickland's test for ineffective assistance of counsel.  *See* Purvis v. Crosby, 451 F.3d 734, 743 (11th Cir. 2006).  Strickland requires the post-conviction movant show there is a "reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Purvis, 451 F.3d at 738 (quoting Strickland, 466 U.S. at 695).  *See also* Lockwood v. Hooks, 415 F. App'x 955, 957 (11th Cir. 2011) (unpublished) (reiterating that "when an error is claimed at the guilt stage of a trial, the focus of the prejudice inquiry is the result at trial").  Petitioner cannot show that even if counsel had made

the arguments and objections alleged in this ground, his arguments and objections would have been successful and the jury would have had a reasonable doubt respecting his guilt.

Further, as discussed in Ground 2 above, the principals instruction was properly given based upon sufficient evidence to support it. The post-conviction court found that trial counsel was not deficient in failing to object because the evidence was sufficient to find Petitioner guilty as a principal with respect to the second-degree murder and attempted second-degree murder. Ex. Q at 21. If the jury convicted Petitioner as a principal, the post-conviction court was correct that the record supports that finding. The state First District Court of Appeal affirmed this ruling. Ex. S

Similarly, as discussed in Ground 3 above, the jury was properly instructed on the charged offenses of second-degree murder and attempted second-degree murder. The jury found Petitioner guilty of armed robbery, which included the element that he possessed and carried a firearm during the robbery. The jury did send out a jury question regarding possession, which the trial court interpreted as relating to the "Further Findings" sections of the verdict form pertaining to finding necessary for enhancement of penalties under the "10-20-Life" sentencing statute. As the court noted, the "Further Findings" section was answered only after the

jury found Petitioner guilty of any of the foregoing offenses; and any

confusion relating to possession of a firearm for purposes of the "Further

Findings" did not result in prejudice to Petitioner because he was not

sentenced based on possession of a firearm under the "10-20-Life" statute.

Ex. Q at 20-21.  Instead, Petitioner was sentenced under the habitual

felony offender provisions of Florida law.

> The Supreme Court has explained:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different that asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law."  A state court must be granted deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision.

Richter, 562 U.S. at 101.  Petitioner did not demonstrate prejudice under

the second prong of Strickland, that but for the alleged error of counsel,

there is a reasonable probability the result of the proceeding would have

been different—a reasonable probability being one sufficient to undermine

the Court's confidence in the outcome.  For that reason, the state court's

adjudication of both these subclaims has not been shown to be contrary to or an unreasonable application of <u>Strickland</u> or any other federal law as determined by the Supreme Court. Further, Petitioner has not shown that the decisions below were based on an unreasonable determination of facts in light of the state court record. Accordingly, Ground 7 should be denied.

### Ground 8: Failure to Obtain Gunshot Residue Tests

Petitioner contends in this ground that his trial counsel rendered ineffective assistance by failing to get a gunshot residue (GSR) test on the co-defendant and the clothing worn during the offense in light of Petitioner's negative GSR test. ECF No. 1 at 14. He also contends that this failure resulted in a deprivation of his Fourteenth Amendment right to a fair trial. ECF No. 1 at 14. This claim was raised in Petitioner's Rule 3.850 motion and summarily denied. Ex. Q at 22-24. The court concluded that trial counsel was not deficient with respect to the gunshot residue evidence. Ex. Q at 23. The state First District Court of Appeal affirmed. Ex. S.

At trial, Deputy Shannon Mitchell testified that samples were taken at the same time from both Petitioner and Martin in order to perform gunshot residue tests. Ex. F at 311-12. Johnson's samples were tested and no gunshot residue was found. Ex. F at 310. She testified that the samples from Martin were not tested because they were "considered unsuitable for

analysis due to the excessive, I believe it says time between the shooting

incident and the sample collection, gunshot residue is easily removed . . .

and the likelihood of finding gunshot residue after a lapse of time greater

than eight hours is considerable." Ex. F at 311-12. She agreed that the

samples were taken at the same time and Petitioner's samples were tested

whereas Martin's were not. Ex. 312. Trial counsel also elicited from

Mitchell that both Petitioner and Martin would have been exposed to

gunshot residue at the same time. *Id.*

The post-conviction court denied the claim, explaining that trial

counsel used this testimony to argue to the jury that the failure to run the

tests on Martin was "curious" and that Petitioner had no gunshot residue on

his hands. Ex. G at 502. The court noted that "[c]ounsel's efforts in this

regard were clearly successful to the extent that the jury found that the

Defendant did not discharge the firearm during the commission of the

offenses, and the Court did not sentence him under the 10-20-Life statute."

Ex. Q at 23. The court concluded that no prejudice had been proven

because "even if trial counsel had directed the testing of Martin's samples,

and if the test results had come back as positive, the result in the instant

case would not have been any different." Ex. Q at 23 (footnote omitted).

The court also stated, "Conceivably, testing of Martin's samples for gunshot

residue could have backfired for the Defendant, if for any reason the results of Martin had also come back as negative." *Id.*

The state courts' determination that Petitioner's counsel was not ineffective is not contrary to any federal law or an unreasonable application of the Strickland standard to the facts of this case. Because Petitioner has failed to carry his burden under § 2254(d), this ground should be denied.

### **Ground 9: Failure to Argue Insufficient Evidence as to Robbery**

This ground contends that Petitioner's trial counsel was ineffective in failing to argue that the evidence was insufficient to prove he acted as a principal in the crime of armed robbery. ECF No. 1 at 15. He contends that as to armed robbery, "[d]efense counsel knew there was no sufficient evidence and no case without Martin's statement, still he failed to argue the lack of evidence to prove any kind of guilt let alone principal to armed robbery." ECF No. 1 at 16. His argument is based primarily on the fact that Martin admitting to lying to officers in his earlier statements. In his reply, Petitioner argues that the "weight of the evidence against him produced at trial cannot sustain the verdicts given," resulting in a violation of due process. ECF No. 28 at 8. In his Rule 3.850 motion, Petitioner contended his counsel was ineffective in failing to argue the evidence was insufficient to prove Petitioner was a principal to the armed robbery

because the evidence at trial showed Martin had lied to investigators.  Ex. Q at 7.

The post-conviction court denied the claim, reasoning that "[j]ust because Martin admitted to lying does not mean that his testimony implicating the Defendant in the armed robbery was inadmissible or otherwise legally insufficient."  Ex. Q at 24.  The court explained:

> At trial, Martin testified that the Defendant had informed him that he knew someone they could rob in order to get weed and money for the Defendant's half of the rent.  (T. 64)  Martin stated that the Defendant set up the meeting with Middleton.  (T. 64)  Martin also stated that the Defendant had his gun with him and that he shot both Middleton and Dolby.  (T. 58; 66)  In short, the Court finds that there is neither a deficient performance nor resulting prejudice for purposes of <u>Strickland</u>.

Ex. Q at 24.  The post-conviction court also noted that evidence other than Martin's testimony was presented to prove the armed robbery.  Petitioner's text message to a friend on the day of the incident indicated he was "trying to see about one, this 175 by Monday or I'm on the street."  Ex. Q at 24 (citing Ex. F at 260).  The court concluded this message, and another one stating that Petitioner said he was trying to "get a lik [lick]," slang for a robbery, indicated Petitioner needed money that day.  Ex. Q at 24 (citing Ex. F at 259).  On appeal from denial of this claim, the state First District Court of Appeal affirmed.  Ex. S.

In determining if sufficient evidence was presented for the jury to
consider a charged offense, the court is "bound by the jury's credibility
choices, and by its rejection of the inferences raised by the defendant."
United States v. Broughton, 689 F. 3d. 1260, 1277 (11th Cir. 2012) (quoting
United States v. Peters, 403 F.3d 1263, 1268 (11th Cir. 2005)).  The
determination of the credibility of an accomplice's testimony is solely within
the province of the jury.  *See also* Woods v. State, 733 So. 2d 980, 986
(Fla. 1999) (citing Carter v. State, 560 So. 2d 1166, 1168 (Fla. 1990)
(same)).  Martin's credibility at trial was properly measured by the finders of
fact, the jurors.  The jury in this case was informed that Martin had given
conflicting statements to the Sheriff's investigators and that he had been
allowed to enter a plea to third-degree felony murder.

As the post-conviction court found, there is no reasonable probability,
as measured by lack of confidence in the result, that but for counsel's
failure to move for a judgment of acquittal or for a new trial based on the
insufficiency or weight of the evidence to convict Petitioner as a principal to
armed robbery, the result of the proceeding would have been different.
The post-conviction court correctly applied the Strickland standard and
Petitioner has failed to show the adjudication was contrary to Strickland or
any other federal law, or was an unreasonable determination of the facts.

Page **52** of **66**

Because Petitioner has not met his burden under § 2254(d), Ground 9 should be denied.

## Ground 10: Failure to Challenge Habitual Felony Offender Designation

Petitioner contends in this ground that his trial counsel rendered ineffective assistance by failing to challenge his qualification for habitual felony offender designation which allowed enhanced sentencing under Florida law. ECF No. 1 at 17. He argues that the State failed to prove that one of his two New Jersey convictions qualified under section 775.084(1), Florida Statutes. He contends that one of the convictions, called "criminal attempt," was not a felony because he served only 364 days and, thus, the offense did not meet the statutory requirements as a predicate felony for enhanced sentencing. *Id*. Petitioner raised this claim in his Rule 3.850 motion, Ex, Q at 9, and the post-conviction court summarily denied the claim. Ex. Q at 25.

The record shows that Petitioner was convicted of both aggravated assault, a third-degree offense in New Jersey, Ex. A at 88, and criminal attempt relating to burglary, also a third-degree offense in New Jersey. Ex. A at 97. He was placed on three years' probation for both and, after he violated his probation, was sentenced to 364 days in jail. Ex. A at 82, 100. The post-conviction court denied this claim, stating:

The Court determines that the Defendant is not entitled to relief on this claim.  At the sentencing hearing, the Court found that he had the requisite prior felony record for habitualization. . . .  The Court's finding was correct because his 2002 conviction in New Jersey for criminal attempt, which was before the Court at sentencing, was properly treated as a felony.  *See* New Jersey Judgment and Sentence; Sentencing Hearing Transcript at 4-5.  The New Jersey Judgment and Sentence reflect that criminal attempt is a third degree offense in New Jersey, as is burglary there, with which he [was] also originally charged at the time.  *See* New Jersey Judgment and Sentence.  Notably, the New Jersey Judgment and Sentence also reflect that his initial sentence for the criminal attempt was three years of probation.  *See id*.  And though the Defendant was sentenced to 364 days in jail for that offense as he alleges, he overlooks that he was sentenced to 364 days in jail only after he violated his probation.  See New Jersey Violation of Probation Sentence.  Under Florida law, a sentence of three years may only imposed for a third degree felony, not a misdemeanor. . . .  Because the Defendant's prior New Jersey conviction was subject to a sentence of three years, the Court was entitled to treat it as a prior felony for purposes of habitualization.  Consequently, trial counsel could not have been ineffective for failure to argue otherwise.

Ex. Q at 26.

Section 775.084, Florida Statutes (2011), provides in pertinent part:

(1) As used in this act:

(a) "Habitual felony offender" means a defendant for whom the court may impose an extended term of imprisonment as provided in paragraph (4)(a), if it finds that:

1. The defendant has previously been convicted of any combination of two or more felonies in this state or other qualified offenses.

§ 775.084(1)(a)1, Fla. Stat. (2011).  "Qualified offense" is defined in section

775.084(1)(e) as

> any offense, substantially similar in elements and penalties to
> an offense in this state, which is in violation of a law of any
> other jurisdiction, whether that of another state, the District of
> Columbia, the United States or any possession or territory
> thereof, or any foreign jurisdiction, that was punishable under
> the law of such jurisdiction at the time of its commission by the
> defendant by death or imprisonment exceeding one year.

§ 775.084(1)(e), Fla. Stat. (2011).  If the penalty for an offense in another

jurisdiction provides a penalty of one year or less, that offense cannot serve

as a qualifying offense in Florida because that penalty makes the offense a

misdemeanor in Florida.  O'Neill v. State, 684 So. 2d 720, 721 (Fla. 1996).

Petitioner was convicted of the offense of aggravated assault in

violation of New Jersey statute 2C12-1(b)(7).  Ex. A at 88.  That statute

provides that a defendant is "guilty of aggravated assault if he: . . . (7)

Attempts to cause significant bodily injury to another or causes significant

bodily injury . . . ."  § 2C12-1(b)(7), New Jersey Code of Criminal Justice

(2011).  A violation of § 2C12-1(b)(7) is also a "third degree offense" under

New Jersey law, for which a three to five year sentence may be imposed.

A violation of § 2C:5-1, New Jersey Code of Criminal Justice (2011), the

offense of criminal attempt for which Petitioner was convicted, is also

designated as a third-degree offense under New Jersey law.  Ex. A at 97.

As the post-conviction court explained, the third-degree New Jersey offenses for which Petitioner was sentenced to 364 days properly qualified as felony offenses for habitualization purposes because they each carried a possible sentence of three years.  *See* N.J.S.A. § 2C:43-6(a.(3) (titled "Sentence of imprisonment for crime; ordinary terms; mandatory terms," and stating, "In the case of a crime of the third degree, for a specific term of years which shall be fixed by the court and shall be between three years and five years.").

Accordingly, the post-conviction court was correct that trial counsel was not ineffective in failing to challenge Petitioner's qualification as a habitual felony offender for purposes of enhanced sentencing.  Petitioner has failed to show that the state courts' adjudication of this claim was contrary to Strickland or any other federal law as determined by the Supreme Court.  He further failed to demonstrate that the adjudication was based on an unreasonable determination of the facts in light of the state court record.  Habeas relief on Ground 10 should be denied.

## Ground 11: Violation of Due Process by Habitual Offender Sentence

In this related claim to Ground 10 above, Petitioner alleges he was deprived of Due Process by being sentenced as a habitual felony offender. ECF No. 1 at 18.  In this claim, he reiterates his argument that he served

an incarceration of less than on year for the offense of "criminal attempt,"
and thus, the offense was not a "qualified offense" for purposes of habitual
felony offender sentencing.  ECF No. 1 at 19.  Petitioner contends he
raised this claim in a motion to correct illegal sentence under Florida Rule
of Criminal Procedure 3.800(a).  ECF No. 1 at 19.  The trial court dismissed
the motion, citing its earlier ruling in the order denying Rule 3.850 relief in
which the court determined that Petitioner was properly sentenced as a
habitual offender.[9]  Petitioner appealed and the ruling was affirmed per
curiam by the state First District Court of Appeal.  Ex. Y.

A federal court may not review a state court's alleged failure to
adhere to the state's sentencing procedures, which is purely an issue of
state law.  *See* Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988).
This limitation on review of purely state law issues applies in "equal force"
when a petition couches the state law issue in terms of equal protection
and due process.  *Id.*  The Supreme Court in Swarthout explained, "[W]e
have long recognized that 'a "mere error of state law" is not a denial of due
process.' " 562 U.S. at 222 (quoting Engle, 456 U.S. at 121, n.21).  "It is not

---

[9] The post-conviction court determined that Petitioner was properly sentenced as a
habitual felony offender in the context of deciding if trial counsel rendered ineffective
assistance for failing to challenge the habitual felony offender designation.  Ex. Q at 25-
26.  *See also* Ground 10, *supra*.

the province of a federal habeas court to reexamine state-court determinations on state-law questions," and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 67-68.

Whether Petitioner was deprived of due process by the court's erroneous application of the state's habitual felony offender sentencing statute is an issue solely of state law; and only when a state law error rises to the level of fundamental unfairness does it implicate federal constitutional due process subjecting it to federal habeas review. *See, e.g.,* Osborne v. Wainwright, 720 F.2d 1237, 1238 (11th Cir. 1983). Petitioner has not demonstrated that any error in his habitual felony offender sentencing rises to the level of fundamental unfairness. Regardless of any lack of cognizability of this claim in a federal habeas review, the claim should be denied as lacking merit.

As fully discussed in Ground 10 above, the trial court correctly determined that Petitioner had at least two qualifying offenses under the requirements of section 775.084, Florida Statutes, in designating him to be a habitual felony offender. No due process or other constitutional violation has been shown and, accordingly, Petitioner has failed to demonstrate his

claim is entitled to relief under § 2254(d).  Ground 11 should, therefore, be denied.

### Ground 12: Counsel's Failure to Limit Principals Instruction

Petitioner next contends that his trial counsel rendered ineffective assistance by failing to move to exclude the principals instruction to the second-degree murder, attempted second-degree murder, and armed robbery charges and apply the instruction only to third-degree felony murder.  He also claims that this failure of counsel deprived him of due process.  ECF No. 1 at 20.  Petitioner raised this claim in a successive motion for post-conviction relief, Ex. Z at 6, which the trial court dismissed. Ex. Z at 35.

The post-conviction court held that the claims in the successive Rule 3.850 motion were properly dismissed under the rule, which provides that a "second or successive motion is an extraordinary pleading" which may be dismissed if it fails to allege new or different ground for relief or if no good cause is shown for failing to raise the claims in a prior motion.  Fla. R. Crim. P. 3.850(h)(2).  The post-conviction court found that the successive motion failed to allege new or different grounds and that the prior determination was on the merits.  Ex. Z at 36.  The court concluded that the additional fact supporting this successive claim—that Kendal Martin entered a plea to

third-degree felony murder—did not take the claim outside the provisions of

Rule 3.850(h)(2).  Ex. Z at 39.  Even though the post-conviction court

dismissed the successive motion, the court reiterated its prior ruling in

which the court found there was sufficient evidence presented at trial to

justify the principals instruction as to all the charges.  Ex. Z at 37-39.

Petitioner appealed the dismissal of his successive motion to the state First

District Court of Appeal, which affirmed per curiam without explanation.  Ex.

DD.

This specific claim is unexhausted and procedurally barred. The

United States Supreme Court has held that presenting a claim to the state

court in a procedural context in which its merits will not be considered

absent special circumstances does not constitute fair presentation.  *See*

Castille v. Peoples, 489 U.S. 346, 351 (1989); *see also* Alderman v. Zant,

22 F.3d 1541, 1549 (11th Cir. 1994) (observing that state habeas petitioner

who fails to raise a federal constitutional claim in state court, or who

attempts to raise it in a manner not permitted by state procedural rules is

barred from pursuing the same claim in federal court absent a showing of

cause for and actual prejudice from the default).  To foreclose federal

review, the state bar must be firmly established and regularly followed.

Ford v. Georgia, 498 U.S. 411, 423-24 (1991).

The limitations on successive motions under Rule 3.850 motions and the case law relative to successive Rule 3.850 motions are firmly established and regularly followed in Florida.  The Eleventh Circuit has concluded that the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds under applicable law. LeCroy v. Sec'y, Fla. Dep't of Corr., 421 F.3d 1237, 1260 n.25 (11th Cir. 2005) (citing Whiddon v. Dugger, 894 F.2d 1266, 1267-68 (11th Cir. 1990)). The state court's dismissal of petitioner's claim as procedurally barred, therefore, rested on independent and adequate state grounds that preclude federal habeas review.  *See* Jennings v. McDonough, 490 F.3d 1230, 1247-48 (11th Cir. 2007) (holding that state court's conclusion that petitioner's claims were procedurally barred by Florida's rule against successive postconviction motions was a state law ground independent of the federal question and adequate to support the state court's judgment, thereby rendering the claims procedurally defaulted on federal habeas review).  To circumvent the state's procedural bar in a federal habeas proceeding, Petitioner must demonstrate cause and prejudice or manifest miscarriage of justice.  *See, e.g.,* Dretke v. Haley, 541 U.S. 386, 393 (2004); McCleskey, 499 U.S. at 494.  These showings have not been made.

Regardless of any procedural default, the claim should be denied on the merits. Petitioner raised several similar or related claims in this proceeding, discussed above, which are without merit because the evidence at trial was sufficient to allow the principals instruction to be given as to second-degree murder, attempted second-degree murder, and armed robbery. *See* Grounds 2, 5, and 9, *supra*. Based on the discussion in those other grounds, and because the evidence was sufficient to support the principals instruction to all the charges, Petitioner cannot demonstrate that the state court's adjudication of this claim was unreasonable. He cannot show that the adjudication resulted in a decision that was contrary to, or involving an unreasonable application of <u>Strickland</u> or any other federal law, as determined by the Supreme Court. Nor can he demonstrate that the decision was based on an unreasonable determination of the facts in light of the state court record. Ground 12 should be denied.

## **Ground 13: Failure to Move to Dismiss Charges**

In Ground 13, Petitioner contends that his trial counsel was ineffective in failing to file a motion to dismiss the second-degree murder charge and the attempted second-degree murder charge, and for failing to seek to apply the principals charge only to third-degree felony murder because, he contends, he can only be guilty of the crime his co-defendant

was convicted of—third-degree felony murder.  ECF No. 1 at 21.  As in

Ground 12 above, this specific claim was raised in Petitioner's successive

Rule 3.850 motion, which was dismissed by the trial court as failing to meet

the requirements of successive motions for post-conviction relief under

Florida law.  Regardless of any procedural default, the claim lacks merit.

Just as Petitioner has no constitutional right to be sentenced to the

same sentence his co-defendant received, as discussed in Ground 1, he

has demonstrated no constitutional right to be tried only for the same crime

for which his co-defendant was allowed to enter a plea and be sentenced.

Petitioner has not met his burden under 28 U.S.C. § 2254(d) and this

ground should be denied.

### <u>Ground 14: Failure to Move to Dismiss Armed Robbery Charge</u>

Petitioner contends that his trial counsel was ineffective in failing to

file a motion to dismiss the armed robbery charge and to apply the

principals instruction only to third-degree felony murder.  ECF No. 1 at 22.

He also argues that this failure deprived him of due process.  Ex. 1 at 23.

He relies on the fact that his co-defendant entered a plea and was

sentenced for third-degree felony murder, and contends that he cannot be

found guilty as a principal to any offenses for which his co-defendant was

not convicted.  ECF No. 1 at 23.  Just as in Grounds 12 and 13 above, this

claim was raised in Petitioner's successive Rule 3.850 motion, which was dismissed by the trial court as improperly successive under Florida law. The state district court of appeal affirmed.  Ex. DD.

The claim is procedurally defaulted, and regardless of any default, without merit based on the presentation of sufficient evidence to justify the principals instruction to all the charges on which Petitioner was tried. Petitioner has provided no authority to support his claim that trial counsel was deficient in failing to move to dismiss charges on the ground that a co-defendant was allowed to enter a plea to only one charge.  Petitioner has failed to carry his burden under § 2254(d).  Thus, Ground 14 should be denied.

## Ground 15: Dismissal of Rule 3.800(a) Motion

Petitioner contends he was deprived of Due Process when the trial court dismissed his Rule 3.800(a) motion to correct sentencing error.  ECF No. 1 at 24.  On September 10, 2104, Petitioner filed a "Motion for Illegal Sentence" pursuant to Florida Rule of Criminal Procedure 3.800(s).  Ex. U at 1.  He alleged in that motion that the trial court erred in sentencing him as a habitual felony offender because his out-of-state conviction for criminal attempt, for which he served only 364 days in jail, was not a qualified offense for habitual felony offender sentencing.  Ex. U at 2.  The trial court

dismissed the motion to correct sentence as procedurally barred because the same claim had been raised and denied on the merits in Petitioner's Rule 3.850 proceeding, and denial had been affirmed on appeal. Ex. U at 15.

As discussed in Grounds 10 and 11 above, the claim of sentencing error is solely an issue of state law that is not cognizable in this federal habeas proceeding. Regardless, the claim is without merit. As discussed earlier, Petitioner was properly sentenced under state law as a habitual offender because his New Jersey convictions were for "qualified offenses" under section 775.084, Florida Statutes. Petitioner cannot demonstrate that the state court's adjudication of this claim was unreasonable or that the adjudication resulted in a decision that was contrary to, or involving an unreasonable application of federal law, as determined by the Supreme Court. Nor can he demonstrate that the decision was based on an unreasonable determination of the facts in light of the state court record. Ground 15 should be denied.

## <u>Conclusion</u>

Based on the foregoing, Petitioner Jason Anthony Johnson, is not entitled to federal habeas relief. Accordingly, the § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is

filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No.1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on April 3, 2017.


**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**